**Affirmed and Majority and Dissenting Opinions filed June 8, 2021.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00839-CR

**ALAN WILLIAM NULL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 209th District Court
Harris County, Texas
Trial Court Cause No. 1443617**

## MAJORITY OPINION

Eleven issues are presented in this appeal from a conviction for sexual assault of a child. For the reasons given below, we overrule each issue and affirm the trial court's judgment.

## BACKGROUND

The complainant, a sixteen-year-old girl, came home in a confused state early one morning and told her mother that she had just been raped. The mother took the

complainant to the hospital, where the complainant was examined by a nurse who specializes in sexual assaults.

The complainant told the nurse that she went out for a jog and was then stopped by a man in a car who had offered her a ride home. The complainant said that she got in the car because the man had sweet-talked her, but rather than take her home, the man drove her to a park, where he used a switchblade to forcibly have sex with her.

After leaving the hospital, the complainant revealed that the jogging story was false. She said that what really happened was that she had skipped school because she was upset over a break up, and she stayed home to drink alcohol while her mother was away at work. She later contacted an adult female friend to join her, and the friend came over to the complainant's house, where they drank more alcohol together.

Before the complainant's mother returned home from work, the friend drove the complainant to her own house, which was less than two miles away. The complainant became intoxicated there and passed out. When she woke up, the hour was late and the friend was asleep. Because the complainant was frantic to get home, she decided to walk home by herself.

The complainant claimed that she blacked out on her walk home and that she woke up in an unfamiliar car with someone pressing on top of her. She did not get a good look at the other person and she did not remember much about the incident at all.

A toxicology report showed that the complainant had Xanax and marijuana in her system. Additional forensic analysis found semen in her vagina and underwear.

2

A few years after the semen sample was collected, appellant was identified as a possible suspect in the sexual assault. Appellant, who was nearly thirty-eight years old at the time of the sexual assault, consented to providing a buccal swab, and based on a test of that buccal swab, a DNA analyst determined that appellant could not be excluded as a contributor of the semen sample that had been collected from the complainant.

Appellant was charged with the complainant's sexual assault. He pleaded not guilty to that charge and his case proceeded to a trial by jury. During the trial, the complainant testified that she did not know anyone by appellant's name and that she never even socialized with men in appellant's age group. She reiterated that she could not remember much about the night in question, and she did not identify appellant in open court as her attacker.

Appellant did not testify in his own defense. Instead, his counsel assailed the prosecution for what he regarded as a "shameful investigation." Counsel emphasized that the complainant had been receiving medical treatment for herpes, which is a highly communicable disease, but the prosecution never ordered any sort of testing to determine whether appellant had similarly been infected with herpes. Counsel argued that this failure amounted to reasonable doubt.

Counsel also criticized the prosecution for not interviewing the complainant's adult female friend, or any of the friend's other acquaintances who may have been at her house on the night in question. Counsel suggested that appellant may have had consensual intercourse with the friend, and that his DNA was found on the complainant because the complainant was wearing the friend's clothes.

The jury rejected these defensive arguments and convicted appellant as charged.

## SUFFICIENCY OF THE EVIDENCE (Issue Four)

We take appellant's issues out of order and begin with his sufficiency challenge because, if meritorious, it would afford greater relief than his other issues. *See Roberson v. State*, 810 S.W.2d 224, 225 (Tex. Crim. App. 1991) (per curiam) (indicating that rendition points should be addressed before remand points).

In a sufficiency challenge, a reviewing court must determine whether a rational trier of fact could have found the essential elements of an offense beyond a reasonable doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). The offense here was sexual assault of a child, which meant that the prosecution had the burden of proving the following essential elements: (1) appellant intentionally or knowingly caused the penetration of the complainant's sexual organ, and (2) the complainant was younger than seventeen years of age at the time of the penetration. *See* Tex. Penal Code § 22.011(a)(2)(A), (c)(1). When deciding whether the prosecution satisfied this burden, we consider all of the evidence in the light most favorable to the verdict. *See Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018).

The jury could have reasonably found that appellant intentionally or knowingly penetrated the complainant's sexual organ because there was evidence that his semen was collected from the complainant's vaginal swab. The jury could have likewise determined that the complainant was younger than seventeen years of age at the time of the offense because her mother testified that the complainant was sixteen when the incident happened.

Appellant counters that the evidence of penetration is insufficient because the in-court testimony from the complainant "is completely devoid of any sexual act." Appellant correctly observes that the complainant testified during the trial that she did not remember much about the incident. Indeed, she did not provide many details

4

at all about the sexual assault. However, just after the assault occurred, the complainant told her mother that she had been raped, and the mother repeated that statement in front of the jury. Also, the complainant told the sexual assault nurse examiner that the man who attacked her had "put his penis in her vagina." That statement was recorded in the nurse's notes, which were admitted for the jury's consideration. Together, these statements provided the jury with a substantial basis for finding that penetration occurred.

Based on the foregoing, we conclude that there was legally sufficient evidence from which the jury could have found every essential element of the offense beyond a reasonable doubt.

## VENUE (Issue Five)

The evidence established that the complainant lived in the city of Jersey Village, which is located within Harris County, and that her adult female friend lived less than two miles to the east of her in the city of Houston. The evidence did not establish where the sexual assault occurred, and absent such evidence, appellant argues that the prosecution failed to prove that venue was proper in Harris County.

Venue is not an element of the offense, which means that the prosecution is not required to prove it beyond a reasonable doubt. *See Schmutz v. State*, 440 S.W.3d 29, 34 (Tex. Crim. App. 2014). The prosecution must only establish that venue is proper by a preponderance of the evidence. *See* Tex. Code Crim. Proc. art. 13.17. We presume that the prosecution satisfied that burden unless venue was disputed in the trial court or the record affirmatively shows that venue was improper. *See* Tex. R. App. P. 44.2(c)(1).

Appellant did not dispute venue during the trial, and he concedes on appeal that he did not produce any evidence affirmatively showing that venue would have

5

been proper in a different county. Therefore, we presume on this record that the prosecution satisfied its burden of showing by a preponderance of the evidence that the proper venue was in Harris County.

### SPOUSE (Issue Six)

The prosecution alleged in both the indictment and the jury charge that appellant was not the complainant's spouse. Appellant correctly observes that his marital relationship was not an element of the offense. Marital relationship relates instead to an affirmative defense. *See* Tex. Penal Code § 22.011(e)(1). Appellant did not claim that defense in this case, but he argues that the prosecution had the burden to prove what it had pleaded—i.e., that appellant was not the complainant's spouse. And as to that point, appellant argues that the evidence is legally insufficient.

This argument fails for two reasons. First, in a sufficiency challenge, we assess the evidence against the essential elements of the offense, not against an erroneously heightened command in the jury charge. *See Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex. Crim. App. 2018). Thus, the prosecution was not required to prove that appellant was not the complainant's spouse.

And second, even if we assumed for the sake of argument that the prosecution had the burden of proving that appellant was not the complainant's spouse, there was testimony directly from the complainant that she did not know anyone by appellant's name and that she did not associate with men in his age group. The jury could have reasonably inferred from that testimony that she did not know appellant and that they were not married to each other.

### REMOVAL OF JURORS (Issues One and Two)

The voir dire in this case spanned two days and required two separate venire panels. After the first day, a partial jury of eleven jurors was seated. Soon after being

seated, one of these eleven jurors approached the bench and informed the trial court that she was not fluent in English. When the trial court inquired how much English she understood, she responded as follows: "Well, some words, I can understand. I tell them to tell you I can't speak English that good because I don't know if it would be fair to sometimes—some words I can understand, some words not." The trial court excused this juror sua sponte, over appellant's objection that the juror could actually understand English.

On the second day of voir dire, another juror from the original eleven came forward to also say that he was not fluent in English. He told the trial court, "Yeah, well my problem is I don't consider to speak much English. I don't understand everything they say and the thing is I don't get everything what they say and I don't know if I could." The trial court excused this juror sua sponte as well, over appellant's objection that the juror was qualified.

Appellant now complains in two related issues that the trial court abused its discretion by removing both of these jurors without a corresponding motion from the prosecution.

Appellant correctly observes that "a trial court should not on its own motion excuse a prospective juror for cause unless the juror is absolutely disqualified from serving on a jury." *See Johnson v. State*, No. AP-77,030, 2015 WL 7354609, at *12 (Tex. Crim. App. Nov. 18, 2015) (not designated for publication) (citing *Martinez v. State*, 621 S.W.2d 797, 798 (Tex. Crim. App. 1981)); *see also* Tex. Code Crim. Proc. art. 35.19 (providing that a person is absolutely disqualified from serving on a jury if he has been convicted of misdemeanor theft or a felony, if he is presently charged with misdemeanor theft or a felony, or if he is insane). However, appellant did not preserve error on this basis. Appellant argued that both jurors should remain

on the jury because they understood English. On neither occasion did he object that the trial court was improperly excusing the juror on its own motion.

Even if we assumed for the sake of argument that error had been preserved, appellant cannot show that he was harmed. The trial court determined that both jurors were excludable for cause because they did not fully understand English. *See* Tex. Code Crim. Proc. art. 35.16(a)(11) (providing that a juror may be challenged for cause if "the juror cannot read or write"); *Montoya v. State*, 810 S.W.2d 160, 170 (Tex. Crim. App. 1989) (applying Article 35.16(a)(11) to a prospective juror who expressed difficulty understanding spoken English). When a trial court excludes a disqualified juror for cause on its own motion, the error in acting sua sponte is considered harmless unless the defendant shows that he was tried by a jury to which he had a legitimate objection. *See Montoya*, 810 S.W.2d at 170. Appellant has not identified any objections to the final jury that was seated in this case. Therefore, we conclude that any error in the removal of the two jurors was harmless.

## THE ENVELOPE (Issue Three)

Appellant's buccal swabs were stored in an envelope that had several markings on it. These markings indicated that the buccal swabs were collected as evidence in an extraneous sexual assault that appellant committed one year after the charged offense against the complainant.

Outside the presence of the jury, and before the buccal swabs were ever admitted into evidence, the trial court commented that the markings were highly prejudicial. To avoid exposing appellant to that unfair prejudice, the trial court determined that it would admit the envelope and the buccal swabs (assuming the proper predicate had been established), but not send either of them back to the jury during deliberations. In the event that the jury asked to see the envelope or the buccal swabs, the trial court ruled "we will then deal with it then."

Later, when the trial resumed and the buccal swabs were offered into evidence, appellant objected to the admission of the envelope on the basis of the prejudicial markings. The trial court overruled that objection. Appellant now challenges that ruling.

For the sake of argument, we will assume without deciding that the trial court erred by admitting the envelope. The question then becomes whether the admission was reversible under the standard for nonconstitutional error.

Nonconstitutional error must be disregarded unless it affects a defendant's substantial rights. *See* Tex. R. App. P. 44.2(b). An error affects a defendant's substantial rights when the error has a substantial and injurious effect or influence on the jury's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If the error had no influence or only a slight effect on the verdict, then the error is harmless. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

There is no indication that the jury ever saw the envelope. It was not published during the trial. And during deliberations, after the jury submitted a note requesting "to see all evidence as entered into court," the trial court issued the following response: "The Court is sending all of the evidence, absent the biological material. If you want to inspect it, please ask to inspect it." That response was consistent with the trial court's earlier ruling that it would not send the envelope back to the jury unless the jury specifically asked to inspect it. The record does not reveal that the jury ever replied with an additional request to inspect the envelope.

Because the record does not show that the jury ever saw the envelope and its prejudicial markings, we conclude that any error in the admission of the envelope had no influence on the jury's verdict, and therefore, the trial court's ruling was harmless.

9

## LESSER-INCLUDED OFFENSE (Issue Seven)

During the charge conference, appellant requested an instruction on the lesser-included offense of attempted sexual assault of a child. The trial court refused the request, and appellant now challenges that refusal.

A trial court reversibly errs by denying a requested instruction for a lesser-included offense if (1) the lesser offense is included within the proof required of the charged offense, and (2) there is some evidence from which a rational jury could acquit the defendant of the charged offense while convicting him of the lesser offense. *See Segundo v. State*, 270 S.W.3d 79, 90–91 (Tex. Crim. App. 2008).

Appellant has satisfied the first prong of this error analysis because an attempt is always included within the proof required of the charged offense. *See* Tex. Code Crim. Proc. art. 37.09(4).

To satisfy the second prong, there must be affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the charged offense. *See Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012). In other words, the evidence must establish the lesser-included offense as a valid, rational alternative to the charged offense. *See Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex. Crim. App. 2000). It is not enough that the jury may disbelieve crucial evidence pertaining to the charged offense. *See Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997).

Appellant believes that evidence of the lesser-included offense was raised by testimony from the sexual assault nurse examiner. He refers to two portions of the nurse's testimony, both arising out of her cross-examination. In the first portion, the nurse testified that seminal fluid can migrate from one place to another, meaning that the location of its discovery is not necessarily the same location of its original

deposit. In the second portion, the nurse testified that she did not find any injuries on the complainant that were indicative of sexual assault. Based on these two lines of testimony, appellant suggests that the jury could have rationally found that his seminal fluid made contact with the complainant by a means other than penetration, such as an attempt. We disagree.

The nurse's testimony does not constitute affirmative evidence that appellant attempted, but failed, to penetrate the complainant's sexual organ. The testimony merely established that the nurse could not be completely certain whether the seminal fluid that was collected from the complainant was the product of a sexual assault. The nurse's uncertainty could have provided a basis for the jury to disbelieve crucial evidence pertaining to the charged offense, but her uncertainty did not raise affirmative evidence for purposes of the lesser-included offense. *See Massey v. State*, 933 S.W.2d 141, 155 (Tex. Crim. App. 1996) ("That a witness agrees that anything is possible and that he cannot be 100 percent certain of anything does not raise evidence for purposes of a lesser included offense."), *superseded on other grounds by statute as stated in Watkins v. State*, 619 S.W.3d 265, 287–88 (Tex. Crim. App. 2021); *cf. Penaloza v. State*, 349 S.W.3d 709, 712–13 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (holding in an aggravated robbery case that a witness's testimony that she was uncertain as to whether the defendant had used a real gun or a toy gun did not raise affirmative evidence that a deadly weapon was not used, which was necessary to support the submission of the lesser-included offense of robbery).

### RULE 702 (Issues Eight and Nine)

The prosecution gave advance notice that it intended to introduce evidence of an extraneous sexual assault during the punishment phase of trial. Appellant filed a written objection to this evidence before the punishment phase began.

11

In the written objection, appellant represented that the prosecution had sent a rape kit from the extraneous sexual assault to Bode Technology, which is a lab in another state. Bode extracted male DNA from the extraneous rape kit, but Bode did not compare that DNA to a known sample collected from appellant. Instead, Bode submitted a report with the DNA profile to the prosecution. Using that report and a buccal swab from appellant, a comparative analysis was then completed by Mary Symonds, a DNA analyst from the Houston Forensic Science Center. Symonds determined that appellant could not be excluded as a contributor of the DNA from the rape kit.

Appellant objected primarily on confrontation grounds because the prosecution did not identify anyone from Bode on its witness list. Instead, the prosecution listed Symonds, and appellant objected that her testimony would be unreliable under Rule 702 of the Texas Rules of Evidence because Symonds had no knowledge of how Bode conducted its testing, of whether the Bode analyst was qualified to administer the test, or of whether the Bode analyst administered the test correctly.

Appellant reiterated these objections just before Symonds took the stand. Without hearing any evidence outside the presence of the jury, the trial court overruled the objections and gave appellant a running objection. Now in two related issues, appellant challenges the trial court's ruling and the admission of Symonds's testimony. He limits his challenge to just Rule 702 and does not re-urge his argument under the Confrontation Clause.

Rule 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue. Expert

testimony that is proffered under this rule is not probative and relevant unless it is also reliable. *See Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). If the proffered expert testimony is derived from a scientific theory, the testimony is reliable if it satisfies the following three criteria: (1) the underlying scientific theory is valid, (2) the technique applying the theory is valid, and (3) the technique was properly applied on the occasion in question. *Id.* at 573.

Appellant argues that the prosecution failed to establish each of these criteria. Beginning with the first criterion, appellant notes that Symonds gave no testimony regarding the validity of DNA testing. Appellant did not raise this complaint with a specific objection in the trial court, but even if he had, his argument would fail because the trial court was allowed to take judicial notice that DNA testing has already been widely accepted by other courts. *See Hernandez v. State*, 116 S.W.3d 26, 29 (Tex. Crim. App. 2003) (per curiam) ("Once a scientific principle is generally accepted in the pertinent professional community and has been accepted in a sufficient number of trial courts through adversarial *Daubert/Kelly* hearings, subsequent courts may take judicial notice of the scientific validity (or invalidity) of that scientific theory based upon the process, materials, and evidence produced in those prior hearings."); *see also Maryland v. King*, 569 U.S. 435, 442 (2013) (recognizing the significance of DNA technology).

In his next point, appellant argues that the prosecution similarly failed to establish the second criterion, which addresses the validity of the technique applying the scientific theory. This point was not raised in the trial court either. In any event, the technique employed in this case was "STR," or short tandem repeats, and the trial court was free to take judicial notice that this technique is also valid. *See Reese v. State*, Nos. 14-02-00847-CR & 14-02-00848-CR, 2003 WL 22303760, at *2–3 (Tex. App.—Houston [14th Dist.] Oct. 9, 2003, pet. ref'd) (mem. op., not designated

for publication) (discussing evidence developed at a hearing concerning short tandem repeats, including "world-wide acceptance of STR DNA testing").

As for his final point, appellant argues that the prosecution failed to prove that Bode applied the technique properly. Appellant preserved this argument, but it still must fail because the prosecution produced evidence pertinent to the third criterion. Symonds testified that Bode was an accredited lab, and that based on certain on-site visits, a review of its operating procedures, and its history of compliance, Bode was outsourced to assist in clearing a backlog of untested rape kits. As for the testing in this particular case, Symonds said that she was not physically present at Bode when the testing occurred, but she went through a checklist to ensure that Bode followed the necessary steps to establishing a DNA profile. She confirmed that all quality control signatures were in place and that Bode's results stayed within acceptable ranges.

Appellant did not produce any affirmative evidence showing that Bode's application of the technique was incorrect. Instead, appellant merely elicited testimony that Symonds had no personal knowledge of certain issues, such as whether Bode's instruments were properly calibrated, or whether the Bode analyst who performed the test was qualified. But Symonds had other reasons to believe that Bode's application was reliable, and her expert opinion was not rendered inadmissible simply because she lacked personal knowledge of every underlying fact. *See* Tex. R. Evid. 703 (noting that an expert need not have a personal observation of facts to form an opinion based on those facts); *Tillman v. State*, 354 S.W.3d 425, 439 (Tex. Crim. App. 2011) (holding that an expert's opinion was admissible even though the expert had not been present for the testimony of every witness).

For all of these reasons, we conclude that the trial court did not abuse its discretion by admitting the expert testimony from Symonds.

**OTHER EVIDENCE OF THE EXTRANEOUS OFFENSE (Issues 10 and 11)**

In addition to the DNA evidence from the extraneous sexual assault, the trial court admitted testimony from the complainant in that extraneous offense, as well as a nurse's report from that complainant's sexual assault examination. The extraneous complainant was unable to identify appellant as her assailant, and the nurse's report did not contain any evidence of identity either. In effect, the DNA evidence was the only nexus between appellant and the extraneous offense.

In his final two issues, appellant argues that if the DNA evidence from the extraneous sexual assault was inadmissible (as he argued in issues eight and nine), then the trial court abused its discretion by admitting this other evidence as well. Because we just concluded that the trial court did not abuse its discretion by admitting the DNA evidence, we necessarily conclude that these final two issues lack merit.

**CONCLUSION**

The trial court's judgment is affirmed.

/s/     Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Wise and Hassan. (Hassan, J., dissenting).

Publish — Tex. R. App. P. 47.2(b).

15